770 N.W.2d 591 (2009)
278 Neb. 331
In re Complaint Against Jeffrey L. MARCUZZO, County Court Judge of the Fourth Judicial District of the State of Nebraska.
State of Nebraska ex rel. Commission on Judicial Qualifications, relator,
v.
Jeffrey L. Marcuzzo, respondent.
No. S-35-080001.
Supreme Court of Nebraska.
August 7, 2009.
*592 Anne E. Winner, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., Lincoln, for relator.
Clarence E. Mock, of Johnson & Mock, Oakland, for respondent.
WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
PER CURIAM.

BACKGROUND
This is an original action before the court following a complaint filed on August 1, 2008, by the Commission on Judicial Qualifications (Commission). The complaint charged the respondent, Jeffrey L. Marcuzzo, a county judge of the Fourth Judicial District of Nebraska, with misconduct, in violation of the Nebraska Code of Judicial Conduct[1] (Code); Neb. Const. art. V, § 30; and Neb.Rev.Stat. § 24-722 (Reissue 2008).
A hearing on the complaint was held on October 23, 2008, before Judge James D. Livingston, a district court judge who was appointed to serve as special master. The special master concluded that Marcuzzo violated provisions of the Code and that the conduct was prejudicial to the administration of justice and brought the judicial office into disrepute, as prohibited by § 24-722(6).
*593 The Commission adopted the findings of the special master and found by clear and convincing evidence that Marcuzzo violated certain provisions of the Code. The Commission recommended that Marcuzzo be suspended from office, without salary, for a period of 3 months. Marcuzzo entered a "Consent to Reprimand." The matter has been submitted to the court without oral argument. Pursuant to Neb. Ct. R. § 5-118, we have reviewed the record and now file this written opinion and judgment adopting the recommendation of the Commission.

FACTS
The complaint filed by the Commission alleged that Marcuzzo violated the following canons of the Code:
§ 5-201. Canon 1. A judge shall uphold the integrity and independence of the judiciary.
(A) An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Code shall be construed and applied to further that objective.
....
§ 5-202. Canon 2. A judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities.
(A) A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
....
(B) A judge shall not allow family, social, political, or other relationships to influence the judge's judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge....
....
§ 5-203. Canon 3. A judge shall perform the duties of judicial office impartially and diligently.
....
(B) Adjudicative Responsibilities.
....
(2) A judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism.
....
(4) A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity....
....
(7) A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding....
Three incidents were alleged in the complaint. The special master made findings of fact for each allegation and found that the facts were proved by clear and convincing evidence.
The first incident related to charges that Marcuzzo improperly involved himself in a criminal case against his nephew. In July *594 2006, Marcuzzo's nephew was charged with a misdemeanor violation in the Douglas County Court. The matter was scheduled for trial on July 12 before Judge Lyn White. Prior to that date, the parties had entered into a plea agreement which would have allowed Marcuzzo's nephew to plead guilty and serve a short jail sentence.
Marcuzzo's nephew failed to appear in Judge White's court on the date scheduled. A warrant was issued for his arrest, and the plea offer was revoked. The special master found that later that day, Marcuzzo inserted himself into his nephew's case by requesting that the prosecutor keep open or reinstate the plea agreement. That evening, Marcuzzo continued his involvement in the case by telephoning the nephew's attorney at her home and leaving a message arranging a meeting the next morning between Marcuzzo, his nephew, and his nephew's attorney.
The special master found that the attorney followed Marcuzzo's instructions and met with him and the nephew privately, at which time, Marcuzzo notified the nephew and his attorney that the nephew would be pleading guilty and the case would be taken care of at 9 a.m. Marcuzzo told the nephew and his attorney that Marcuzzo had arranged for Judge Lawrence Barrett to handle the plea. Prior to the nephew's appearance before Judge Barrett, Marcuzzo was seen having a discussion with Judge Barrett in a bailiff's office. Judge Barrett heard the case, and the nephew pled guilty to the misdemeanor charge. He was sentenced to probation.
The special master concluded that Marcuzzo was in violation of § 5-201 of the Code in that he willfully disregarded his duties as a judge by inserting himself into the criminal case involving his nephew. Marcuzzo had ex parte communications (1) with the prosecutor, in which Marcuzzo made a personal request to keep open the plea agreement; (2) with the nephew's attorney, both by telephone after hours and by meeting in person; and (3) with Judge Barrett concerning the handling of the case. The special master found that Marcuzzo's efforts had a bearing on the case as far as keeping open the plea agreement, scheduling the date and time for the case, and arranging which judge would hear the case.
In addition, the special master found that Marcuzzo violated § 5-202(A) and (B) by inserting himself into his nephew's case, which lent the prestige of his judicial office to advance the private interest of the nephew and gave others the impression that special treatment was being given to the nephew due to Marcuzzo's position as a judge. The special master found that was a direct affront to public confidence in the integrity and impartiality of the judiciary.
The special master noted that Marcuzzo's nephew's case was originally scheduled to be presented to a judge who had a reputation for stern handling of similar cases, with a plea agreement in which the parties agreed to recommend and accept 10 days in jail. The nephew violated his bail by failing to appear. Marcuzzo's insertion of himself into the criminal proceeding resulted in the case's being scheduled for a new date and time with a different judge hearing the case and with Marcuzzo's nephew receiving a sentence of probation.
According to the special master, the evidence was uncontradicted that the change in the case was directly related to Marcuzzo's insertion of himself into the case and his conducting ex parte communications with the prosecutor, defense counsel, and Judge Barrett, who heard the case. Although there was no evidence that Marcuzzo conferred with Judge Barrett as to the outcome, it was uncontradicted that Marcuzzo *595 spoke with Judge Barrett to arrange for him to hear the case.
The special master also determined that the ongoing involvement of Marcuzzo in his nephew's case was a violation of § 24-722(1) and (6). Marcuzzo's misconduct was willful and in bad faith, and it rose above a mere error in judgment. The special master found that Marcuzzo wrongfully used the power of his office intentionally or with gross unconcern for his conduct and that the actions were solely for the purpose of giving an advantage to the private interests of another in derogation of the faithful discharge of judicial duties. Marcuzzo's conduct was prejudicial to the administration of justice and brought the office of Marcuzzo, as a member of the judiciary, into disrepute.
The second incident involved a preliminary hearing conducted by Marcuzzo on October 29, 2007, at which Marcuzzo expressed displeasure concerning how the hearing was scheduled. At the end of the hearing, Marcuzzo raised the defendant's bond from $750,000 to $2.5 million. Marcuzzo also had an ex parte communication with the prosecutor in which Marcuzzo criticized the filing of the charges as being undercharged and in which Marcuzzo used profane terms.
The special master could not find that the bond increase was in violation of the Code or § 24-722 based on the evidence presented. He concluded he did not have sufficient background on the case and the parties involved to determine that the bond increase was other than a matter of judicial discretion based on the court's seeing and hearing the evidence presented. However, the special master determined that Marcuzzo violated §§ 5-201, 5-202(A), and 5-203(B)(4) and (7) of the Code by communicating ex parte with the prosecutor.
As to § 5-201 of the Code, the special master found that Marcuzzo compromised the integrity and independence of the judiciary by holding an ex parte communication with counsel for one of the parties and expressing his displeasure and opinion as to the charges filed. Marcuzzo advocated a position in an ongoing case in which he knew, or should have known, that the outcome could be affected by the ex parte communication.
Marcuzzo violated § 5-202(A) of the Code by inserting himself into a case which was still on file with a possibility of criminal charges being amended. The special master found that Marcuzzo's ex parte actions compromised the integrity and impartiality of the judiciary.
The special master found that Marcuzzo violated § 5-203(B)(4) of the Code by berating a colleague of the prosecutor with whom he had had an ex parte conversation. The profane manner in which the conversation was conducted was a violation of the patience, dignity, and courteousness of the official office. Marcuzzo violated § 5-203(B)(7) of the Code because his ex parte communication could have affected the legal proceedings, and Marcuzzo knew or should have known of that possible effect. In addition, the actions violated § 24-722(6).
The third incident involved Marcuzzo's leaving a profane and threatening message on an attorney's telephone when Marcuzzo believed a case had been improperly scheduled in his court. The special master found that these actions violated §§ 5-201 and 5-203(B)(4) of the Code. Marcuzzo violated the standards of conduct necessary to preserve the integrity and independence of the judiciary and did not act in a patient, dignified, and courteous manner with the attorney. The actions also violated § 24-722(6).
*596 The Commission reviewed the entire record before the special master. As to the first matter, involvement in Marcuzzo's nephew's case, the Commission agreed with the special master that due to Marcuzzo's involvement, the case was presented to a different judge at a different time and place than originally scheduled and that the evidence was uncontradicted that the change was directly related to Marcuzzo's insertion of himself into the case and his ex parte communications.
Concerning the second incident, the preliminary hearing, the Commission noted that all attorneys involved in the case believed that the prosecutor followed the correct procedure to change the date of the hearing. At the beginning of the hearing, Marcuzzo expressed displeasure that he was not consulted before the hearing was rescheduled, and he indicated that he wanted to speak with the prosecutor. Marcuzzo appeared annoyed throughout the hearing, and at the close of the hearing, he found probable cause to bind the defendant to district court and raised the defendant's bond.
Immediately following the hearing, Marcuzzo had a private conversation with the prosecutor in an adjoining room concerning the scheduling of the case and the way the charges were brought. Marcuzzo used expletives several times during the conversation and explained that the defendant should have been "`hammered'" with other felony charges.
Concerning the third incident, the Commission noted that Marcuzzo called the prosecutor with respect to the above-described events and left a message on the prosecutor's voice mail. The message was threatening in tone, and Marcuzzo used profane language. A transcript of the voice mail message was included in the record. The prosecutor brought the message to the attention of his supervisors, who directed him to have no contact with Marcuzzo.
The next day, Marcuzzo attempted to speak with the prosecutor at the courthouse. When the prosecutor would not speak with Marcuzzo, he ordered the prosecutor to "`get over here.'" The prosecutor declined to speak with Marcuzzo. Six days later, Marcuzzo apologized to the prosecutor and his supervisors for leaving the message.
The Commission found that in his answer, Marcuzzo generally admitted the allegations in the complaint and offered additional facts and explanations for his conduct. He acknowledged that his conduct may have violated the Code. After the special master filed his report, Marcuzzo filed objections to the report, arguing that his conduct in the matter involving his nephew's criminal case was not done willfully or in bad faith. He otherwise acknowledged that his actions violated the Code and that disciplinary action was appropriate.
The Commission concurred with and adopted the findings of the special master with respect to the allegations regarding ex parte contact with a prosecutor and with respect to the threatening and profane voice mail message. The Commission also concurred with and adopted the findings with respect to the allegation that Marcuzzo involved himself in his nephew's criminal case, but the Commission found that Marcuzzo's conduct was willful and deliberate, but not necessarily done in bad faith.
The Commission concluded that there is clear and convincing evidence that Marcuzzo's conduct violated §§ 5-201, 5-202(A), and 5-203(B)(4) and (7) of the Code, as well as § 24-722(6). It recommended that Marcuzzo be suspended from office, without salary, for a period of 3 months. On *597 February 17, 2009, Marcuzzo agreed to accept the recommendation of the Commission.

STANDARD OF REVIEW
In a review of the findings and recommendations of the Commission, this court shall review the record de novo and file a written opinion and judgment directing action as it deems just and proper, and may reject or modify, in whole or in part, the recommendation of the Commission.[2]

ANALYSIS
Upon consent of the respondent, an order of reprimand, discipline, suspension, retirement, or removal may be entered by this court at any stage of the proceedings.[3] Marcuzzo filed such a consent and did not file a petition to modify or reject the recommendation of the Commission.
The factual findings of the Commission have not been challenged before this court. We have reviewed the record de novo, and we conclude that the factual determinations set forth in the Commission's findings and recommendation are well supported by the record and have been proved by clear and convincing evidence.
The facts surrounding Marcuzzo's involvement in his nephew's criminal case show that Marcuzzo asked the prosecutor to leave the plea agreement open until his nephew appeared in court. Marcuzzo left a message on the voice mail of the nephew's attorney asking for a meeting with the attorney and the nephew the next morning. Marcuzzo was observed meeting with the judge who eventually handled the matter. The judge sentenced the nephew to probation, even though the earlier plea agreement would have resulted in the nephew's serving 10 days in jail. The record supports the Commission's finding that Marcuzzo's involvement altered the circumstances and outcome of the case.
The record also supports the Commission's finding that Marcuzzo had ex parte contact with a prosecutor after a preliminary hearing was rescheduled. Marcuzzo had a private conversation with the prosecutor, during which Marcuzzo used expletives and criticized the prosecutor for not filing additional charges. Marcuzzo later called the prosecutor and left a threatening, profane voice mail. Marcuzzo sternly ordered the prosecutor to come talk to Marcuzzo. Marcuzzo later sent a letter of apology to the prosecutor.
The Commission concluded that there was clear and convincing evidence that Marcuzzo's conducted violated the Code. We agree. His actions in all three instances demonstrated a lack of regard for the integrity and independence of the judiciary. Marcuzzo's actions were improper. His behavior did not promote public confidence in the integrity and impartiality of the judiciary. He allowed family relationships to influence his conduct and used the prestige of his judicial office to advance the private interests of a member of his family. His actions brought the judicial office into disrepute.
We next determine the appropriate sanction. Pursuant to § 24-722(6), a judge of any court of this state may be reprimanded, disciplined, censured, suspended without pay for a definite period not to exceed 6 months, or removed from office for conduct prejudicial to the administration of justice that brings the judicial *598 office into disrepute.[4] A clear violation of the Code constitutes, at a minimum, a violation of § 24-722(6).[5]
This is the first disciplinary action taken against Marcuzzo. However, the matter includes three instances of conduct that violated the Code. This court has stated:
The goals of disciplining a judge in response to inappropriate conduct are to preserve the integrity of the judicial system as a whole and to provide reassurance that judicial misconduct will not be tolerated.... We discipline a judge not for purposes of vengeance or retribution, but to instruct the public and all judges, ourselves included, of the importance of the function performed by judges in a free society....
The discipline imposed must be designed to announce publicly our recognition that there has been misconduct.... It must be sufficient to deter the respondent from engaging in such conduct again, and it must discourage others from engaging in similar conduct in the future.... We weigh the nature of the offenses with the purpose of the sanctions and examine the totality of the evidence to determine the proper discipline.[6]
By imposing discipline, this court assures the public that we will neither permit nor condone judicial misconduct. This court is charged with the "responsibility to dispense judicial discipline in a manner that preserves the integrity and independence of the judiciary and restores and reaffirms public confidence in the administration of justice."[7] In this case, the Commission has recommended a suspension without pay for 3 months. We conclude that a 120-day suspension without pay should be imposed as discipline for this judicial misconduct. We therefore modify the recommendation of the Commission accordingly.

CONCLUSION
Judge Marcuzzo's conduct was in violation of the Code. As discipline, we impose a 120-day suspension from office without pay, effective on the issuance of the mandate in this case.
JUDGMENT OF SUSPENSION WITHOUT PAY.
HEAVICAN, C.J., not participating.
NOTES
[1] Neb.Code of Judicial Conduct §§ 5-201 to 5-205.
[2] In re Complaint Against Lindner, 271 Neb. 323, 710 N.W.2d 866 (2006). See, also, Neb. Const. art. V, § 30(2); Neb.Rev.Stat. § 24-723 (Reissue 2008); Neb. Ct. R. § 5-118.
[3] See Neb. Ct. R. § 5-115(C).
[4] In re Complaint Against Lindner, supra note 2. See, also, Neb. Const. art. V, § 30(1).
[5] In re Complaint Against Lindner, supra note 2.
[6] In re Complaint Against White, 264 Neb. 740, 757, 651 N.W.2d 551, 566 (2002) (citations omitted).
[7] In re Complaint Against Lindner, supra note 2, 271 Neb. at 331, 710 N.W.2d at 872.